IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 14-cv-02792-RBJ

ARNIE PORTER,

    Applicant,

v.

DEBORAH DENHAM, Warden,

    Respondent.

---

ORDER OF DISMISSAL

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 1), filed *pro se* by Applicant Arnie Porter. Respondent Warden has filed a Response to Order to Show Cause (Docket No. 11) and Applicant has filed a Reply (Docket No. 12). Having considered the same, the Court will deny the Application.

**I.  BACKGROUND**

On September 24, 1997, a jury found Mr. Porter guilty of distribution of cocaine, conspiracy to distribute crack cocaine, two counts of distribution of crack cocaine, and mail fraud. *United States v. Porter*, No. 98-1199, 1999 WL 1116812, at *1 (10th Cir. Dec. 6, 1999). Evidence presented at trial showed that Applicant was a high-ranking member of a criminal organization known as the Gangster Disciples, through which he purchased and distributed cocaine. *Id.* at *2. Additionally, witnesses testified that Applicant financed the initial startup of this drug distribution network through a

fraudulent insurance claim, that he had at least ten people working for him cooking and distributing crack cocaine, and that he received a portion of all the proceeds from these sales. *Id.*

On April 24, 1998, Applicant was sentenced to two concurrent life sentences. *Id.* His sentence was reduced to 360 months in June 2008, and then to 292 months in December 2011, pursuant to 18 U.S.C. § 3582(c)(2). *United States v. Porter, et al.*, Action No. 96-cr-444-EWN (JLK) (D. Colo.) (Docket Nos. 279, 314). Mr. Porter's current projected release date, via good conduct time, is January 17, 2008. (Decl. of Regina Hufnagle, Docket No. 11-1, at ¶ 5; attach. 1, at 9).

Mr. Porter was originally incarcerated in U.S. Penitentiary Allenwood, a high-security federal penitentiary.[1] (Docket No. 11-2). In September 2008, he was transferred to a medium-security prison, and in May 2010, to a low-security prison. *Id.* Applicant has been confined at FCI-Englewood, a low security prison, since August 2013.[2] (*Id.*).

The Bureau of Prisons (BOP) has designated Mr. Porter as having a Public Safety Factor (PSF) of Greatest Severity Offense. (Docket No. 11-1, at ¶ 6). A PSF consists of factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public. *See* BOP Program

---

[1] *See* www.bop.gov/locations. *The Court may take judicial notice of a government agency's website. See, e.g., N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n. 22 (10th Cir. 2009) (taking judicial notice of information about "the occurrence of Falcon releases" on "[t]he websites of two federal agencies").

[2] *See id.*

Statement (PS) 5100.08, Inmate Security Designation and Custody Classification, Chapter 5, page 7.[3] The Greatest Severity Offense classification is assigned to "a male inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale (Appendix A)." *Id.* http://www.bop.gov/policy/progstat/5100_008.pdf. Under the Offense Severity Scale, the Greatest Severity rating is assigned to a drug offender whose current offense involved the offender's participation in an organizational network where he organized or maintained ownership interest/profits from large scale drug activity. (PS 5100.08, Appx. A, Page 1). An inmate designated with a PSF of Greatest Severity Offense must be housed "in at least a Low security level institution unless the PSF has been waived." (*Id.*, Chapter 5, Page 7).

On January 1, 2014, Mr. Porter submitted an Inmate Request to Staff (cop-out) seeking a waiver of his PSF. (Docket No. 11-1, at ¶8; attach. 3, at 13). Applicant's unit manager reviewed Applicant's PSF and advised him in writing on January 3, 2014, that his PSF of Greatest Security Offense was appropriate and he should remain at a low level facility. (*Id.*).

Mr. Porter's unit team conducted a custody classification review on January 25, 2014, and determined that his PSF of Greatest Severity precluded reduction of Applicant's classification, despite his clear conduct and active participation in programming. (Docket No. 11-1, at ¶9; attach. 4, at 15). Applicant was scheduled for another custody classification program review in January 2015. (Docket No. 11-1, at

---

[3] *See* www.bop.gov/policy/progstat/5100_008.pdf.)

¶ 9).

In the Application, Mr. Porter asserts that the BOP refused to take into account all of the factors listed in 18 U.S.C. § 3621(b) during the custody classification program review. Specifically, Applicant contends that the BOP failed to consider the statements made by former District Judge Nottingham at the April 2008 resentencing, as required by § 3621. (Docket No. 1, at 3). For relief, Applicant asks that Respondent be ordered to transfer him "to a minimum custody level (or a Satellite Low)," or to reconsider him for minimum custody level assignment, based on all of the factors set forth in § 3621. (*Id.* at 6).

In response to an October 10, 2014 Order issued by Magistrate Judge Gordon P. Gallagher, Respondent filed a Preliminary Response to the Application on October 28, 2014, advising the Court that Respondent did not intend to raise the affirmative defense of failure to exhaust administrative remedies. (Docket No. 6). This case was thereafter drawn to the undersigned.

## II. LEGAL STANDARDS

### A. Habeas Corpus Actions

Habeas corpus review is available under § 2241 if an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *See Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). "A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its

validity and must be filed in the district court where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996).

A prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement must do so through an application for habeas corpus. *See McIntosh v. United States Parole Common*, 115 F.3d 809, 811-12 (10th Cir. 1997). In contrast, a prisoner who challenges the conditions of his confinement must pursue a civil rights action. *Id.* at 812; see also *Sandifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir.2011) ("It is well-settled law that prisoners who wish to challenge only the conditions of their confinement ... must do so through civil rights lawsuits ... not through federal habeas proceedings."); *see also McIntosh*, 115 F.3d at 811-12 (although a § 2241 attack on the execution of a sentence may challenge some matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters, . . . this does not make § 2241 actions like "condition of confinement" lawsuits, which are brought under civil rights laws.").

### B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). A court may not assume that an applicant can prove facts

that have not been alleged or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).   The Applicant's pro se status does not entitle him to an application of different rules.   *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III. ANALYSIS

### A.   Subject Matter Jurisdiction

Respondent first argues that the Court lacks subject matter jurisdiction over the § 2241 Application because Applicant's claim that his BOP security classification violates the Constitution and/or federal statute and his request for placement in a minimum security facility challenge the conditions of his confinement.

"'[A] request by a federal prisoner for a change in the place of confinement is properly construed as a challenge to the conditions of confinement, and, thus, must be brought pursuant to [*Bivens*].'" *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (affirming district court's denial, on jurisdictional grounds, of prisoner's habeas petition seeking transfer out of super-maximum security prison, and quoting *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (affirming district court's summary denial of motions seeking transfer to facilities located closer to their families)).

Applicant maintains that his claim is cognizable under § 2241 because he seeks a "quantum change" in the level of custody, e.g., from a low security prison to a minimum security prison.    (Docket No. 1, at 3).

Other circuit courts of appeal have recognized that a prisoner's request for a

quantum change in the level of custody may arise under § 2241. See, e.g., Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 237 (3d Cir. 2005). In Woodall, the petitioner challenged regulations limiting his placement in a Community Corrections Center ("CCC"). Id. at 243-44. The Third Circuit noted that a CCC is not an ordinary penal institution because CCCs "often include an employment component under which a prisoner may leave on a daily basis to work in the community." Id. at 243. Inmates may also "be eligible for weekend passes, overnight passes, or furloughs." Id. Thus, "placement in a CCC represents more than a simple transfer." Id. The Third Circuit determined that such a challenge, which "crosses the line beyond a challenge to, for example, a garden variety prison transfer," is a challenge to the execution of the prisoner's sentence and therefore properly brought under § 2241. Id. at 243-44.

In Falcon v. United States Bureau of Prisons, 52 F.3d 137, 138 (7th Cir.1995), the Seventh Circuit held that if a prisoner seeks a "quantum change" in the level of custody, such as more freedom, his remedy is a habeas corpus proceeding. However, if the prisoner is seeing a different program or location or environment, then his challenge is to the conditions of his confinement and his remedy is under the civil rights laws. Id.

The Tenth Circuit has neither adopted nor rejected the standard set forth in Woodall, but has distinguished the case on its facts. See Palma-Salazar, 677 F.3d at 1037. In McIntosh, the Tenth Circuit recognized the decision in Falcon, but did not specifically approve or disapprove of the Seventh Circuit's rule that a "quantum change" in the level of custody was actionable under § 2241.

Mr. Porter states in his Reply that his request for transfer from a low security institution to a minimum security institution is similar to petitioner Woodall's requested transfer from prison to a CCC. (Docket No. 12). Applicant states that detention in a minimum security facility "often entails the same components that are entailed for an inmate detained in CCC." (*Id.*). However, Applicant's allegations are vague and are insufficient to demonstrate that a transfer from FCI-Englwood to a minimum security facility is not a "garden variety prison placement." *Palma-Salazar*, 677 F.3d at 1037.

Accordingly, the Court finds that the § 2241 Application is subject to dismissal for lack of subject matter jurisdiction because Applicant's claim challenges his prison security classification and the type of facility in which he is confined, thereby implicating the conditions of his confinement, rather than the duration thereof.

However, even if Applicant's allegations are cognizable under § 2241, the Court finds that Applicant is not entitled to federal relief, for the reasons discussed below.

### B.  Due Process Claim

Applicant claims that the BOP has violated his due process rights because "[t]he BOP refused to take into account all the relevant factors listed in § 3621(b)," during review of his security classification in 2014. (Docket No. 1, at 2-3).

The "Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (stating that due process protections apply only when a person is deprived of a liberty or property interest).

Applicant does not assert that he has been deprived of life or property. The Court thus considers whether Applicant has a constitutionally-protected liberty interest in a reduction in his security classification so that he is eligible for placement in a minimum-security facility. For a federal prisoner, a liberty interest may arise from either the Due Process Clause or from federal law. *See Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir.1998).

Decisions about where an inmate is confined and his security classification are left to prison managers. *See* 18 U.S.C. § 4001(b) (vesting the authority to control and manage federal correctional institutions and to classify inmates in the Attorney General). The Constitution does not afford prisoners a liberty interest in a specific security classification or in being incarcerated in a particular prison. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification], and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976) ("[T]he Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the . . . prison system.").

To establish the existence of a liberty interest, Mr. Porter therefore must show that application of BOP policies or regulations have subjected him to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *see Sandin v. Conner*, 515 U.S. 472, 484 (1995), or that the government's action "will inevitably affect the duration of his sentence." *Id*. at 487. Applicant does not state specific facts in the

9

Application or his Reply to satisfy either requirement. As such, Mr. Porter has not been deprived of a liberty interest protected by the Fifth Amendment Due Process Clause.

### C. BOP's Compliance with 18 U.S.C. § 3621(b)

Mr. Porter also claims that his security classification review did not comply with § 3621(b) because prison officials refused to take into account the statements by former District Judge Nottingham, in resentencing the Applicant in 2008. (Docket No. 1, at 3).

> Section § 3621(b) provides, in relevant part:
>
> **(b) Place of imprisonment. –** The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, . . ., that the Bureau determines to be appropriate and suitable, considering–
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the [sentencing] court– (A) concerning the purposes [of the prison sentence]; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2) of title 28.]

18 U.S.C. § 3621(b).

Judicial review of the BOP's substantive placement decisions under § 3621 is not available under the Administrative Procedure Act (APA). *See* 18 U.S.C. § 3625 ("The provisions of . . . 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under [18 U.S.C. §§ 3621-26].");

*see also Redmon v. Wiley*, No. 08-1288, 349 F. App'x 251, 256 (10th Cir. Oct. 13, 2009) (unpublished) (holding that the BOP's decision not to admit inmate into its residential drug abuse treatment program established under § 3621(c) was not subject to judicial review under the APA). However, the Court may determine whether the BOP exceeded its statutory authority in deciding Mr. Porter's classification level. *See Fristoe*, 144 F.3d at 630-31 ("While § 3625 may preclude us from reviewing the BOP's substantive decision in appellant's case, it does not prevent us from interpreting [§ 3621(e)(2)(B)] to determine whether the BOP exceeded its statutory authority") (internal citations omitted); *see also Renka v. Garcia*, 2013 WL 2249222, at *4 (D. Colo. May 22, 2013) (district court has jurisdiction to determine whether BOP exceeded its statutory authority under §§ 3621(b) and 3624(c) in determining that a 180-day placement in a Residential Re-entry Center was appropriate).

The record reflects that Mr. Porter's unit team conducted a custody classification review on January 25, 2014. (Docket No. 11-1, at ¶9). According to Ms. Hufnagle, Applicant's unit manager, the unit team considered Applicant's Offense Conduct in his original PSR–specifically, that Mr. Porter plotted to kill a police officer in retaliation for a search warrant; he held a position of governor of the Gangster Disciples in the State of Colorado; and, he attempted to a contract murder of a witness and co-defendant so they could not testify against him in his original trial. (*Id.*). *See also Porter*, 1999 WL 1116812, at *2. The unit team also reviewed Applicant's Amended Judgment and Commitment Order dated June 5, 2008, and the Addendum to the PSR on Motion for Sentence Reduction. (*Id.* at ¶ 10). In addition, the unit team took into account

Applicant's clear conduct record in prison and his participation in prison programs. Despite Applicant's positive institutional record, the unit team concluded that waiver of Applicant's PSF was not appropriate because of the serious nature of his offenses and the need to protect the public safety.   (*Id.* at ¶¶ 9, 10).

The Court finds that the BOP's decision not to grant a waiver of Applicant's PSF Greatest Severity Offense designation was within the scope of the BOP's statutory authority, was an appropriate decision, and did not violate federal law.   The BOP gave individualized consideration to the statutory factors in conducting the 2014 review of Applicant's security classification, in accordance with the criteria set forth in § 3621(b). No more is required.   *See*, *e.g.*, *Renken*, 2013 WL 2249222, at *5; *Radick v. Federal Bureau of Prisons*, No. 11-cv-00298-DME, 2011 WL 2692951 at *3 (D. Colo. July 11, 2011).   Mr. Porter contends that the BOP did not consider all of the § 3621(b) factors because the unit team failed to take into account the favorable statements made by former District Judge Nottingham at the 2008 resentencing.[4]   However, the record demonstrates that Applicant's unit team did consider Applicant's efforts to better himself while in prison, but determined that the nature and severity of his offense behavior outweighed his post-offense conduct.   In short, the BOP's decision complied with § 3621(b).

The Court finds that Mr. Porter is not entitled to federal habeas relief for his

---

[4] During the 2008 resentencing hearing, former District Judge Nottingham found that Mr. Porter was "not the same man that stood before [him] ten years ago"; that he had engaged in rehabilitation efforts in prison by working and continuing his education; and, that Applicant's post-offense conduct was "unusual and [did not] reflect the kind of hopeless attitude and depression that one might expect of a young man who is serving the rest of his life in prison."   (Case No. 96-cr-00444-EWN (JLK), *Transcript of Resentencing Hrg.*, at Docket No. 289).

claims challenging the BOP's decision not to waive his PSF of Greatest Severity Offense, which necessarily precludes his transfer to a minimum security facility.

**IV.   ORDERS**

For the reasons set forth above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 1), filed *pro se* by Applicant Arnie Porter on October 10, 2014, is DENIED for lack of subject matter jurisdiction, or, in the alternative, on the merits.   It is

FURTHER ORDERED that the § 2241 Application is DISMISSED.   It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.   The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith   *See Coppedge v. United States*, 369 U.S. 438 (1962).   If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated June 29, 2015, at Denver, Colorado.

BY THE COURT:

_/s/ Brooke Jackson_

R. Brooke Jackson
United States District Judge